IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES DEVORE,

      **Plaintiff,**

  v.                                                                **Civil Action 2:17-cv-408**
                                                                 **Judge James L. Graham**
                                                                 **Magistrate Judge Jolson**

**GARY MOHR, et al.,**

      **Defendants.**

## REPORT AND RECOMMENDATION
## AND ORDER

Plaintiff James Devore, a *pro se* prisoner, filed a Motion for Leave to Proceed *in forma pauperis* on May 12, 2017. (Doc. 1). Pursuant to 28 U.S.C. § 1915(a), that Motion is **GRANTED**. All judicial officers who render services in this action shall do so as if the costs had been prepaid. However, as explained below, the Court concludes this action cannot proceed.

Because Plaintiff is a prisoner seeking redress from the government, this Court must conduct an initial screening pursuant to 28 U.S.C. § 1915A(a). The Court must dismiss the Complaint if it determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); *see Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) ("[T]he allegations of a complaint drafted by a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers...."); *Thompson v. Kentucky*, 812 F.2d 1408, No. 86-5765, 1987 WL 36634, at *1 (6th Cir. 1987) ("Although *pro se* complaints are to be construed liberally, they still must set forth a cognizable federal claim." (citation omitted)). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Applying those standards here, the Undersigned **RECOMMENDS DISMISSAL**. (Doc. 1-2).

## I. BACKGROUND

Plaintiff's claim arises from a dispute with fellow inmate Michael Avery on August 27, 2016 at Belmont Correctional Institution ("BeCI"). (Doc. 1-2 at ¶ 11). Plaintiff alleges that Mr. Avery stole some of his personal belongings, including coffee and sardines, so Plaintiff approached him in the TV room to ask for their return. (*Id.*). Plaintiff admits that he "was angry about the theft and demanded that the items be returned immediately." (*Id.* at ¶ 12) An argument ensued. (*Id.*).

According to Plaintiff's allegations, Mr. Avery picked up a metal and wooden chair, threw it at his head, and "abruptly started to leave the room." (*Id.*). Plaintiff claims that his "hand was sliced open by one of the chair legs" when he blocked the chair from hitting him. (*Id.*). Plaintiff adds that "the chair was previously broken and was missing its foot, or caster, from the leg, leaving the square leg open and very sharp." (*Id.*; *see also id.* (stating that the "chair was damaged and the poor maintenance made it a weapon")). Plaintiff informed the Corrections Officer on duty that his hand needed medical attention. (*Id.* at ¶ 13). Consequently, Plaintiff was transported by ambulance to the local hospital. (*Id.*). After receiving seven stitches in his hand, Plaintiff returned to BeCI with his hand wrapped in bandages. (*Id.*).

Plaintiff states that a few days later, he:

> was called into [BeCI Unit Manager] Mr. Joseph Eberlin's office and he was questioned about what happened between him and inmate Avery. Plaintiff was intimidated by inmate Avery and was reluctant to "snitch" on another inmate because "snitches get[ ] stitches" prevented plaintiff from explaining that he was a victim of a theft and also a victim of assault. Plaintiff knew that it was risky and Eberlin told the plaintiff that he had already been informed about the fact that [he]

2

had stitches in his hand and what had happened.

(*Id.* at ¶ 14). Plaintiff alleges that his refusal to share information angered his Unit Manager, Mr. Eberlin, so Mr. Eberlin wrote a conduct report. (*Id.* at ¶¶ 14–15). Plaintiff states that he signed "the electronic signature pad before [he] was able to read a printed copy of the report." (*Id.* at ¶ 15).

Plaintiff states that when he read the report, he discovered that Mr. Eberlin had incorrectly listed him as the aggressor, and he immediately told Mr. Eberlin the report was wrong. (*Id.*). Plaintiff asserts that Mr. Eberlin did not correct the report, had him arrested and sent to the "hole" for seven days, and conducted no further investigation despite Plaintiff's request for one. (*Id.* at ¶¶ 15–16). Plaintiff contends that his hand "was still bleeding and required daily dressing changes." (*Id.* at ¶ 16; *see also id.* (describing his hand injury as "painful" and "slow to heal")).

It is Plaintiff's position that Mr. Eberlin "placed him in the 'hole' as retaliation for not telling on the inmate, and putting himself at risk by becoming a snitch." (*Id.*; *see also id.* (stating that "Inmate Avery had already attacked plaintiff once and plaintiff was afraid to tell on Avery"). Plaintiff admits that Mr. Eberlin interviewed at least one witness, but claims he falsified the conduct report when he reported that "inmate [George] Alexander … had stated that [P]laintiff and inmate Avery 'struggled for control' of the chair, and that this was the cause of the laceration on Plaintiff's hand." (*Id.*). Plaintiff further alleges that Mr. Eberlin falsely reported that he lied to security and medical staff about the cause of the injury and "eventually admitted to the altercation." (*Id.*).

Plaintiff filed an informal complaint against Mr. Eberlin for alleged falsification of "official paperwork by charging [P]laintiff with a violation of Rule 19: fighting—with or without

weapons, including investigation of, or perpetuating fighting." (*Id*. at ¶ 17). Plaintiff explains that he filed:

> two separate Informal Complaint Resolution (ICR) forms, one on September 23, 2016 with Dave Taylor, Unit Manager Administrator, and one on September 27, 2016, with Deputy Warden of Operations. Both ICR's addressed not only the Conduct Report, but rather the fact that Joseph Eberlin had falsified ODRC paperwork, retaliated against the plaintiff by removing him from his housing assignment under the false premise that he was the aggressor in the fight. Plaintiff denied that he was involved in a "fight." Plaintiff was assaulted by inmate Avery and staff ignored this fact. Taylor refused to address key issues.

(*Id*. at ¶ 18). Plaintiff states that he "escalated" the ICRs to "Notice of Grievance (NOG) forms." (*Id*. at ¶ 19).

Plaintiff states that the first ICR was denied on the ground that he could not appeal a hearing officer and RIB decision because those decisions have a separate appeal process. (*Id*.). Plaintiff claims the denial was improper because he was appealing Mr. Eberlin's lack of investigation and retaliation, not his decision. (*Id*.). Plaintiff asserts that the second ICR was denied on the ground that he is not guaranteed a bed move within the institution. (*Id*.). Plaintiff again argues there was a misunderstanding as to the basis for his complaint, which was that he "was moved out of the dormitory as retaliation, while the inmate who had assaulted [him] was allowed to stay in the house even after the inmate admitted to theft and was guilty of assaulting [P]laintiff." (*Id*.). In sum, Plaintiff maintains his grievances were denied improperly without any investigation into the underlying facts. (*See, e.g.*, *id*. at ¶ 20). Finally, Plaintiff asserts that placing him in the "hole" with an injured hand subjected him to "cruel and unusual punishment." (*Id*. at ¶ 24; *see also id*. at ¶ 29 (claiming cruel and unusual punishment based on the alleged falsification of documents identifying him "as the perpetrator and investigator of the crime")).

4

## II. DISCUSSION

### A. Alleged Retaliation for Plaintiff's Refusal to "Snitch"

In the most general terms, Plaintiff's primary claim is that he was retaliated against "for not telling on … inmate [Avery], and putting himself at risk by becoming a snitch." (Doc. 1-2 at ¶ 16 ). However, "'[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" *Miller v. Sanilac Cty.*, 606 F.3d 240, 247 (6th Cir. 2010) (quoting *Sigley v. Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)). Here, Plaintiff's unwillingness to participate in the investigation of the incident—in his words, his unwillingness to "snitch"—is not the exercise of a constitutionally-protected right. *See, e.g.*, *Clark v. Gipson*, No. 13-cv-3012, 2015 WL 328966, at *6–7 (C.D. Ill. Jan. 26, 2015) (finding that plaintiff had no constitutional right to refuse to act as an informant); *Clardy v. Mullens*, No. 12-cv-11153, 2012 WL 5188012, at *8 (E.D. Mich. Aug. 29, 2012) ("Plaintiff has not carried his burden of showing that a First Amendment right to assert ignorance in response to a correction officer's questions about a misconduct within the prison was 'clearly established' when Defendants … allegedly retaliated against [him] for exercising this putative right."); *Canosa v. State of Hawaii*, No. 05-00791, 2007 WL 128849, at *10 (D. Hawaii Jan. 11, 2007) ("The act of refusing to provide information about fellow inmates is not 'protected conduct' under the First Amendment."). Consequently, Plaintiff's claim fails.

### B. Alleged Refusal to Investigate Plaintiff's Side of the Story

Plaintiff also alleges that once he revealed Mr. Avery as the aggressor, Defendants refused to investigate his side of the story. This also is not a constitutional violation. *Walton v. Jones*, No. 14-1299, 2016 WL 483143, at *7 (W.D. Tenn. Feb. 2, 2016) ("Section 1983 liability

5

may not be imposed against a defendant for a 'mere failure to act' based upon information contained in a grievance.") (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation."); *see also Daniels v. Lisath*, No. 2:10-cv-968, 2011 WL 2710786, at *2 (S.D. Ohio July 13, 2011).

Further, even if the law allowed a claim based on an alleged failure to investigate, Plaintiff's claim would fail on the merits. Plaintiff acknowledges that Mr. Eberlin spoke to witness George Alexander but contends that Mr. Eberlin only "used part of … [his] statement" in concluding that Plaintiff's injury arose as a result of a mutual struggle for control of the chair. (*See* Doc. 1-2 at ¶ 16; Doc.1-3, PAGEID #: 24 ("I realized that [Mr. Eberlin] only used part of inmate George Alexander's statement."). Plaintiff also attaches two grievance dispositions that outline the steps taken to investigate Plaintiff's claims. (Doc. 1-3, PAGEID #: 26–27). These investigations led to Plaintiff being found guilty of fighting. (*Id.*, PAGEID #: 27; *see also id.*, PAGEID #: 34 (disposition of the RIB finding that Plaintiff instigated a physical confrontation with Mr. Avery "by approaching him in an aggressive manner after Inmate Avery 552393 stole commissary from him"); *see also id.*, PAGEID #: 38 ("Devore aggressively approached Inmate Avery demanding his property back")). Thus, there was an investigation and Plaintiff's disagreement with the way it was conducted or its outcome is insufficient to state a § 1983 claim.

### C. Alleged Deliberate Indifference to Plaintiff's Safety

#### 1. Alleged Failure to Repair the Chair

Although prison officials may be liable under the Eighth Amendment for inmate on inmate violence, such liability only arises if those officials act with deliberate indifference to excessive risk to an inmate's health or safety. *See, e.g. Farmer v. Brennan*, 511 U.S. 825, 825

6

(1990) (a prison official may be held liable for acting with "deliberate indifference" to inmate health or safety only if that official knows that the inmate faces a substantial risk of serious harm and disregards it). Here, Plaintiff alleges that Defendants acted with deliberate indifference to an excessive risk to his safety by failing to repair the chair that caused his injury. (*See* Doc. 1-2 at ¶ 13 ("The chair was damaged and poor maintenance made it a weapon.")). This alone is insufficient to support a claim of deliberate indifference. *See, e.g.*, *Graham v. United States*, No. 97-1590, 2002 WL 188573, at *1 (E.D. Pa. Feb. 5, 2002) (dismissing prisoner's claim that defendants improperly sold and dispensed items easily used as weapons where plaintiff was attacked with a sharp object by another prisoner in a common area, resulting in stitches).

### 2. Alleged Failure to Provide Plaintiff Medical Attention

Eighth Amendment claims based on medical treatment may be resolved on the pleadings where the complaint makes clear that, even accepting the allegations, the plaintiff can prove no set of facts in support of the claim. *See LaFlame v. Montgomery Cty. Sheriff's Dep't*, 3 F. App'x 346, 347 (6th Cir. 2001). This is particularly true where the complaint reflects that the plaintiff was indeed receiving some kind of treatment for his ailment. *Dotson v. Wilkinson*, 477 F. Supp. 2d 838, 849 (N.D. Ohio 2007) (dismissing Eighth Amendment claim based on receipt of treatment).

In the Complaint, Plaintiff makes clear that he has received medical treatment. Specifically, Plaintiff states that after his hand was injured, he was transported to the local hospital, where he received treatment that included stitches and bandaging. (Doc. 1-2 at ¶ 13). Plaintiff describes his hand injury as "painful" and "slow to heal," and states that it required "daily dressing changes." (*Id.* at ¶ 16). However, nowhere does Plaintiff allege that he failed to receive proper treatment for his wound. Consequently, to the extent that Plaintiff may be

7

attempting to allege a claim based on deliberate indifference to his medical needs, his claim again fails.

## III. CONCLUSION

For the reasons stated, it is **RECOMMENDED** that Plaintiff's Motion for Appointment of Counsel be **DENIED** (Doc. 2) and that his Complaint (Doc. 1-2) be **DISMISSED**.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: May 26, 2017 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE